Date signed January 07, 2009



**E. STEPHEN DERBY**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

In re:                                        *
                                              *
RONNIE LYNN CARMAN,                           *     Case No. 08-16965-DK
                                              *     Chapter 7
    Debtor.                              *
                                              *
*        *        *        *        *        *        *
                                              *
In re:                                        *
                                              *
CARMAN BOATS, INC.,                           *     Case No. 08-16968-DK
                                              *     Chapter 7
    Debtor.                              *
                                              *

MEMORANDUM DECISION ON THE DeCHELLO OBJECTION TO
THE TRUSTEE'S PROPOSED SALE OF ONE 32' CARMAN BOAT

      Steven DeChello contracted with Carman Boats, Inc. to purchase a 32' motorboat that was

to be built for him by Carman for a purchase price of $140,000. Delivery was due on April 1, 2007.

Mr. DeChello paid Carman Boats $107,000 of the purchase price, but the boat was never completed

or delivered to him. Both Carman Boats, Inc. and Ronnie Carman have now filed bankruptcy cases

under Chapter 7.

1

In both cases the Chapter 7 Trustee proposes to sell to the Maryland Watermen's Association his interests in a 32' boat, which was scheduled in Mr. Carman's case, for the price of $57,000. This boat was the boat that Mr. Carman started manufacturing under the contract with Mr. DeChello, but which Mr. Carman resold to the Maryland Watermen's Association under a contract it entered into with Carman Boats, Inc. The Maryland Watermen's Association had paid $77,000 of its $125,000 contract purchase price, which included $27,072 that was paid directly by the Maryland Watermen's Association to Cummins Power Systems, LLC for an engine for the boat.

Both Mr. DeChello and the Watermen's Association have been shortchanged. There is only one 32' boat, and even it has not been fully completed.

Mr. DeChello objects to the Trustee's proposed sale. He claims a "special property" in the boat under Section 2-501(1)(b) of the Maryland Commercial Law Code that he asserts gives him a vested right to recover the boat from the seller upon making a tender of the unpaid portion of the purchase price. Md. Com. L. Art., Sec. 2-502(1)(a), (2). The Trustee and Mr. DeChello have stipulated that Mr. DeChello has offered to pay the $33,000 contract balance to the Trustee. The tender is for the boat with the engine that was purchased and paid for directly by the Watermen's Association.

The Trustee wishes to proceed with the $57,000 sale to the Watermen's Association, rather than accept the $33,000 tender from Mr. DeChello, because it will mean more money will be realized by the bankruptcy estate(s).

Mr. DeChello's contract with Carman Boats, Inc. was signed July 14, 2006. Work was done on the boat, and late in 2006 the 32' hull came out of the mold. Mr. Carman testified it was December, 2006, but he earlier appears to have testified he was to pull it from the mold during the

2

week of November 6, 2006.  The precise date in late 2006 is not important to the determination of the instant objection.  Mr. Carman knew this hull was to be for Mr. DeChello's boat.  Some additional work may have been done on or in connection with this hull, but Mr. DeChello's boat was far from being completed when Mr. DeCello traveled to Carman Boats on the last Friday in March, 2007 to pick it up, the contract having called for an April 1, 2007 completion.  For example, it had no engine, and it was not operable.  Mr. DeChello did not accept or take the boat.

Mr. Carman never purchased an engine Mr. DeChello's boat.  He needed $33,000 for the engine and related fittings and tanks, and it appears to the court that he did not have it.  The hull was just left at Carman Boats.

Section 2-501, Md. Com. Law Code, provides, in part relevant here:

> "(1) The buyer obtains a special property ... in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to ... reject them ....  In the absence of explicit agreement identification occurs

> \*                    \*                    \*                    \*
> "(b) If the contract is for the sale of future goods ..., when goods are ... otherwise designated by the seller as goods to which the contract refers; ...."

The Official Comments to this section stress that all doubt should be resolved in favor of finding identification.  "It is possible, however, for the identification to be tentative or contingent.  In view of the limited effect given to identification by this Title the general policy is to resolve all doubts in favor of identification."  Comment 2.  "In view of the limited function of identification there is no requirement in this section that the goods be in deliverable state or that all of the seller's duties with respect to the processing of the goods be completed in order that identification occur."  Comment 4.

3

When a buyer has a special property in goods for which the buyer has paid part of the purchase price, the buyer has a right to recover the goods from the seller by making a good tender of the balance of the purchase price.  Section 2-502, Md. Com. Law Code, provides as potentially relevant here:

"(1) ...[E]ven though the goods have not been shipped a buyer who has paid a part or all of the price of goods in which he has a special property under the provisions of the immediately preceding section may on making and keeping good a tender of any unpaid portions of their price recover them from the seller if:

"(a) In the case of goods bought for personal ... purposes, the seller repudiates or fails to deliver as required by the contract; ....

*                    *                    *                    *

"(2) The buyer's right to recover the goods under subsection (1)(a) vests upon acquisition of a special property, even if the seller had not then repudiated or failed to deliver."

Under the liberal standard for identification in Section 2-501, when the 32' hull came out of the mold in late 2006, it was identified by Mr. Carman, as the seller, as for the contract of the buyer, Mr. DeChello.  Pursuant to the limited legal precedent and authority cited to the court by the parties, however, the hull was at best a "future good"; it was not an existing  "good" in which Mr. DeChello, as buyer, was vested with a special interest.  See In re Tacoma Boatbuilding Co., 158 B.R. 19, 23 (S.D.N.Y. 1993).  It was a hull; it was a shell; it was not a boat.  It was a part, not a whole.  It lacked propulsion.

The definition of "goods" in Section 2-105 provides, as relevant here:

"(2) Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are 'future' goods.  A purported present sale of future goods or of any interest therein operates as a contract to sell."

4

The good contracted for by Mr. DeChello was a motorboat. The bare 32' hull was not an existing boat. Therefore, it was not a "good". It was not even a non-conforming good; rather, it was a "future good". Mr. DeChello thus did not obtain a special interest in the hull under Section 2-501 of Maryland's Commercial Law Code.

The situation did not remain static after Mr. DeChello failed to pick up a completed boat by his contractual completion date of April 1, 2007. A second 32' Carman boat was contracted for by the Maryland Watermen's Association in April, 2007 for $125,000. Mr. Carman created another mold for the Watermen's boat and had laid in a skin layer. However, he never completed the hull. In late 2007, Mr. DeChello sued Carman Boats, Inc. and Mr. Carman for damages in State court for, among other things, breach of the DeChello contract, and he did not sue Mr. Carman or Carman Boats, Inc. for specific performance of the contract. Mr. DeChello also never tendered the balance of the purchase price to either Mr. Carman or Carman Boats to acquire the uncompleted hull.

At some point late in 2007 Mr. Carman, lacking the funds to purchase the engine for Mr. DeChello's boat and to complete it, changed his identification of the hull for the DeChello contract to the hull for the Watermen's contract. He then proceeded to make material modifications to the hull to conform to the requirements of the Watermen's contract. While the DeChello contract had called for the hull to be Seafoam Green, Mr. Carman put on the white gel coat finish called for in the Watermen's contract. The interior layout was changed. Standard, rather than custom equipment was installed. The biggest change was for the engine and support structure. The DeChello contract had called for a Volvo Diesel Outdrive 350 horsepower engine. This is a so-called inboard/outboard engine. The Watermen's contract was for a Cummins OSB 305 horsepower inboard engine.

The change in engines required different through-hulls, and the through-hull for the inboard engine's shaft was cut, although the shaft was not installed. Some other through hulls were installed. The location of the fuel tank was changed. The inboard engine purchased by the Watermen's Association as an accommodation for Carman Boats and Mr. Carman was dropped into the hull, where it is held on the motor mounts for that engine by eight bolts. The boat was not made operational. It had no engine shaft, no packing box, no support strut, no rudder, and no propeller. There was at least one unfilled hole in the bottom for the inboard engine shaft. The wiring may or may not have been completed. In its incomplete state the modified 32' Carman boat was put on display by the Watermen's Association as a prize in a fund-raising raffle at the annual winter boat show at the Ocean City, Maryland Convention Center in January, 2008. Mr. DeChello saw it at this boat show and recognized it as the hull originally intended for him.

On May 22, 2008 both Ronnie Carman and Carman Boats, Inc. filed bankruptcy cases under Chapter 7. There was no evidence presented in the record that any further improvements to the 32' Carman boat were made after the boat show in January, 2008. As a result of these bankruptcy case filings, a stay of further proceedings in Mr. DeChello's suit for damages against Mr. Carman was automatically imposed. After the bankruptcy case filings, Mr. DeChello for the first time asserted a special property in the 32' Carman boat under Md. Com. Law Code, Sec. 2-501(1)(b) and sought to recover the boat with the Watermen's engine under Section 2-502(1) by tendering to the Chapter 7 Trustee the $33,000 contract balance of his contract price.

Mr. DeChello's objection to the Trustee's proposed sale of the 32' Carman boat to the Maryland Watermen's Association will be overruled and denied for the following reasons. First, Mr. DeChello never acquired a special property in the 32' Carman boat because the hull was never

6

finished sufficiently to acquire the status of a "good" before Mr. Carman changed the contract for which it was identified to the that of the Watermen's Association and thereafter made material modifications to the hull.  Since Mr. DeChello's only basis for claiming the hull was identified to his contract was the unilateral designation by Mr. Carman as seller under Section 2-501(b) before the hull had the status of a good, there does not appear to be any prohibition in that section against the seller amending its designation before the component parts of a "future good" had become a "good."  This conclusion does not foreclose any breach of contract or fraud claims by such action, but only relates to Mr. DeChello's claim of a statutory special property.

Second, and in the alternative, even if Mr. Carman could not amend his designation, the hull never achieved the status of a "good" before the Chapter 7 bankruptcy cases were filed.  The hull never achieved the status of a completed boat that could float, because there was a hole for the engine shaft that had not been installed and because there was no propulsion.  Although the engine was sitting in place, it had no shaft, strut, packing box, propeller, or rudder.  It was not quite yet a motorboat.

Third, and also in the alternative, Mr. DeChello by his actions had rejected the hull as not conforming to his contract before the bankruptcy cases were filed.  He refused to pick up the hull when he came on the last Friday in March, 2007; he sued the Debtors for damages, not specific performance. He did not tender the balance of the contract price to recover the unit as a nonconforming boat until he tendered to the Trustee after the bankruptcy cases were filed.

When a bankruptcy case is filed, the Trustee acquires all rights that a hypothetical lien creditor who had extended credit at the moment of filing to the debtor could have obtained.  11 U.S.C. Sec. 544(a).  The objective that a creditor should not be able to improve its position post-

7

petition, which would disadvantage other creditors.   Mr. DeChello is a creditor, albeit and involuntary creditor, at least for the monies he advanced to Carman Boats for the uncompleted contract.  Property rights must be in being at the moment of filing to be recognized in bankruptcy. Mr. DeChello's asserted right to recover the hull, complete with an engine purchased by the third party Watermen's Association, upon payment of the balance of Mr. DeChello's contract with Carman Boats was not in being at the time the bankruptcy cases were filed. At the moment of filing, a lien creditor of Carman Boats or Mr. Carman could have obtained rights in the hull and in the motor superior to the asserted claims of Mr. DeChello.

        Mr. DeChello refers the court to two maritime cases involving the status of creditors' liens on boats, namely, The Hirondelle, 21 F. Supp. 223 (S.D.Ala. 1937) and The Hope, 191 Fed. 243 (D.Mass. 1911).  These were in admiralty, and they are not direct authority, because different laws were involved.  In The Hope, materialmen were not charged with notice of a reservation of title in a seller to an operating boat's  engine installed in the boat, so that the engine was held subject to the materialmen's lien. If anything, this case would seem to support the Trustee's position that a creditor could have obtained rights in the hull and engine superior to the unasserted claims of Mr. DeChello at the moment of the bankruptcy filings.  In The Hirondelle, liens of creditors on the ship did not encompass radio equipment that was not part of the navigation equipment and was owned and operated by a third party for public use.  Here, of course, the purchased by the Watermen's Association would have been essential to the operation of the 32' Carman boat once completed, so the case does not appear applicable.

Consequently, the objection by Mr. DeChello to the Trustee's proposed sale of the 32'

Carman boat to the Maryland Watermen's Association will be overruled and denied, and the sale

will be approved.  Orders will be entered separately in accordance with this opinion.

Counsel for the Trustee is requested to submit appropriate forms of Order.


cc:    Christopher F. Drummond, Esquire
       S. Craig Sewell, Esquire
       119 Lawyers Row
       Centreville, Maryland    21617

       Matthew W. Cheney, Esquire
       Crowell & Moring
       1001 Pennsylvania Avenue, N.W., 10th Floor
       Washington, D.C.    20004

       Monique D. Almy, Trustee
       Crowell & Moring
       1001 Pennsylvania Avenue, N.W., 10th Floor
       Washington, D.C.    20004

       Walter Gunby, Esquire
       P.O. Box 448
       Cambridge, Maryland    21613

       Stephen M. Hearne, Esquire
       105 W. Main Street, 2nd Floor
       Salisbury, Maryland    21801

       Melvin J. Caldwell, Esquire
       Caldwell & Whitehead, P.A.
       109 Camden Street
       Salisbury, Maryland    21801

       Ronnie Lynn Carman
       6779 Charles Cannon Road
       Marion, Maryland    21838

9

Carman Boats, Inc.
P.O. Box 222
Marion Station, Maryland   21838-0222

**End of Opinion**