Date signed January 21, 2009



**E. STEPHEN DERBY**
**U. S. BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| RONNIE LYNN CARMAN, | * | Case No. 08-16965-DK |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |
| * * * * * * | * | |
| | * | |
| In re: | * | |
| | * | |
| CARMAN BOATS, INC., | * | Case No. 08-16968-DK |
| | * | Chapter 7 |
| Debtor. | * | |
| | * | |

MEMORANDUM OPINION ON GORDON LEE BONNER'S
OBJECTION TO TRUSTEE'S SALE OF 46' BOAT

In July, 2005, Gordon Lee Bonner signed a written contract with Carman Boats, Inc. to build a 46' motorboat for $278,950. The contract included a Specification Sheet and required progress payments. There were no specific provisions regarding delivery.

Over the next two years and 10 months the boat was under construction; some changes were made; and total progress payments, including those for changes, were made that exceeded the

1

contract price. However, based on the testimony and other evidence presented at the hearing on October 21, 2008, without being quantified, it appears, and the court so finds, that a portion of the contract price remained unpaid after change order payments are deducted. The boat was not completed, but the work remaining was primarily finish work, including built in furniture, cabinetry, woodwork and painting. Mr. Bonner was building and installing some of the furniture and woodwork himself. The engines had been installed and tested, but there had not been any final sea trial.

Mr. Bonner became unsatisfied with delays by Carman Boats in finishing construction of the boat, and at some point early in 2008 he decided to have another company finish the boat. Mr. Carman told Mr. Bonner that Carman Boats would rather finish the boat; but if Mr. Bonner wanted to have someone else finish the boat, he could pick up the boat. Mr. Bonner did not pick up the boat before these bankruptcy cases were filed. He asked Carman Boats to keep the boat until he found someone else to finish it. On May 19, 2008, Mr. Bonner sent an e-mail to Mr. Carman that stated: "I am still waiting for a price from Hartge [a yacht yard] to finish the boat. As soon as I get that I will make my decision and let you know." T'ee Exh. 1. These bankruptcy cases were filed three days later on May 22, 2008. Mr. Bonner may not have immediately learned that these bankruptcy cases had been filed, because he continued to consider whether he wanted someone else to complete the boat. On July 7, 2008, he sent another e-mail to Mr. Carman that asked: "Have you made any progress on the boat since I saw you last? I'm still waiting for prices from Hartge." T'ee Exh. 1.

Also in 2008, before these bankruptcy cases were filed, paperwork was initiated by Carman Boats to register the boat with the U.S. Coast Guard in Mr. Bonner's name. The paper work included a Boat Certificate, an Application for Title, and a Bill of Sale. Bonner Exhs 2, 3. This

2

paperwork was prepared and sent to Mr. Bonner by Carman Boats for signature. Mr. Bonner signed the paperwork and returned it to Carman Boats. The paperwork was then forwarded to the Coast Guard by a secretary at Carman Boats, but the Coast Guard rejected and returned it, because none of it had been signed by Carman Boats. The paperwork was neither signed by Mr. Carman or Carman Boats, nor was it resubmitted by Carman Boats to the Coast Guard, before Mr. Carman and Carman Boats filed their bankruptcy cases. When these bankruptcy cases were filed, the boat was still located at Carman Boats' boatyard.

The Trustee proposes to sell the 46' Carman boat at auction. Mr. Bonner objects because he claims ownership of the boat under Md. Com. Law Code, sec. 2-401(3)(b). That section provides:

> (3) Unless otherwise explicitly agreed where delivery is to be made without moving the goods,
> \*          \*          \*          \*          \*
> (b) If the goods are at the time of contracting already identified and no documents of title are to be delivered, title passes at the time and place of contracting.

Mr. Bonner contends that this section is applicable because his written contract with Carman Boats was silent as to the delivery obligations of the seller and because the parties did not agree that Carman Boats was to deliver documents of title. The court agrees that the written contract is silent as to these matters.

For Section 2-401(3)(b) to apply, however, there must be goods and the goods must be identified. Identification here, as argued by Mr. Bonner, is controlled by Md. Com. Law Code, sec. 2-501(1). The court agrees that Section 2-501(1) is the applicable section. It provides in relevant part:

> (1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such

3

identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(a) When the contract is made if it is for the sale of goods already existing and identified;

(b) If the contract is for the sale of future goods ..., when goods are shipped, marked or otherwise designated by the Seller as goods to which the contract refers .....

Mr. Bonner's position appears to be that identification of the 46' boat occurred under any one of three scenarios. First, under Section 2-501(1), "in any manner explicitly agreed to by the parties." Second, under Section 2-501(1)(a), "[w]hen the contract is made if it is for the sale of goods already existing and identified". Third, under Section 2-501(1)( b) "...when goods are ... otherwise designated by the seller as goods to which the contract refers." Bonner Mem. of Law, pp. 4-5. Thus, Mr. Bonner poses the Question Presented as: "Did ownership of the boat pass from Carman Boats to Bonner at the time the parties entered the contract?" Id. at p. 3.

There is a fatal flaw in Mr. Bonner's argument. There was no boat in existence, and thus no good in existence, at the time the contract to build the 46' boat was entered into by Mr. Bonner and Carman Boats, Inc..

There was no explicit agreement at the time of contracting as to "identification of existing goods as goods to which the contract refers ...." that would satisfy Section 2-501(1). The contract was not "for the sale of goods already existing and identified", and so Section 2-501(1)(a) is not satisfied. Finally, since there was no 46' boat yet in existence when the contract to construct one was signed, the boat could not yet have been a good that was "otherwise designated by the seller as goods to which the contract refers" under Section 2-501(1)(b). Therefore, at the time of contracting,

the 46' boat to be built for Mr. Bonner had not yet been identified under Md. Com. Law Code, sec. 2-501.

In his post-hearing memorandum, Mr. Bonner cites four cases in support of his position on the issue of identification, but they are inapposite. Each case involved an item in existence with the status of a good at the time of relevance to the dispute at issue. In <u>The Colonel's Inc. v. Cincinnati Milacron Marketing Company</u>, 910 F. Supp. 323, 326 (E.D. Mich. 1996), which involved a seller's remedy, not a buyer's as here, the subject machine had been "specially designed and built ... and had an identifiable purchase order number." <u>Id.</u> Under such circumstances the court found the machine had been "most certainly identified to the contract." <u>Id.</u> The case of <u>Weisz Graphics Div. of Fred B. Johnson Co., Inc. v. Peck Industries, Inc.</u>, 403 S.E.2d 146 (S.C. 1991), which also involved a seller's rather than a buyer's remedies, involved goods that had been fully manufactured and were waiting to be delivered. <u>Id.</u> at 104-05. The purchaser of a 27' sailboat took ahead of the provider of floor-plan financing in <u>Holstein v. Greenwich Yacht Sales, Inc.</u>, 404 A.2d 842 (R.I. 1979) as a buyer in the ordinary course of business where, at the time the contract of sale was signed, the boat was in existence and identified to the contract by brand name, length, and specific hull number, although the boat had not yet been outfitted with all its extras. Finally, in <u>Russell v. Transamerica Insurance Co.</u>, 322 N.W.2d 178 (Mich.App. 1982), which involved who bore the risk of loss, the boat existed at the time of the contracted for its sale, but it had been left at the dealership for additional work.

The definition of "goods" in Md. Com. Law Code, sec. 2-105(2) requires goods to be both existing and identified before any interest in them can pass. That section provides:

>   (2) Goods must be both existing and identified before any interest in them can pass. Goods which are not both existing and identified are "future" goods.  A purported present sale of future goods or of any interest therein operates as a contract to sell.

At the time that Mr. Bonner and Carman Boats entered into the contract, the 46' boat was at best a future good the contract was a contract to sell.  This is not to say that enough work was not done on the boat so that at some later time it became a good identified to the contract.  That point is conceded by the Trustee for sake of argument in her Memorandum at page 7, but it was not presented as part of Mr. Bonner's objection, either factually or as to legal significance, and it is consequently not addressed here.

Because at the time of contracting there was no good in existence, not 46' Carman motorboat, and there was no good that had been identified, title did not pass to Mr. Bonner at the time and place of contracting under Md. Com. Law Code, sec. 2-401(3)(b).  Two prerequisites for the application of that section are missing.  Therefore, Mr. Bonner's objection to the Trustee's sale is overruled and denied.  This opinion is without prejudice to a claim by Mr. Bonner for money against the appropriate bankruptcy estate(s).

The primary case relied upon by Mr. Bonner is also inapposite and does not alter this conclusion.  See Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01, 625 F.2d 44 (5th Cir. 1980).  In Gulfstar, by the time the revised contract of sale was signed, the boat was in existence, it was identified by hull number, it had been inspected by the purchasers, and it had been taken for a trial sail.  Id. at 46.  Unlike the instant matter, there was no dispute that the vessel was "goods" within the meaning of the Uniform Commercial Code.  Id. at 47.  The issue was whether there had been a sale.

A separate order will be entered to implement this opinion. The Trustee is requested to submit a proposed form of order.

cc:   Matthew W. Cheney, Esquire
       Crowell & Moring
       1001 Pennsylvania Avenue, N.W., 10th Floor
       Washington, D.C.   20004

       Monique D. Almy, Trustee
       Crowell & Moring
       1001 Pennsylvania Avenue, N.W., 10th Floor
       Washington, D.C.   20004

       Walter Gunby, Esquire
       P.O. Box 448
       Cambridge, Maryland    21613

       Stephen M. Hearne, Esquire
       105 W. Main Street, 2nd Floor
       Salisbury, Maryland    21801

       Melvin J. Caldwell, Jr., Esquire
       Kathryn A. Whitehead, Esquire
       Caldwell & Whitehead, P.A.
       109 Camden Street, P.O. Box 4520
       Salisbury, Maryland    21803-4520

       Ronnie Lynn Carman
       6779 Charles Cannon Road
       Marion, Maryland    21838

       Carman Boats, Inc.
       P.O. Box 222
       Marion Station, Maryland   21838-0222

Christopher F. Drummond, Esquire
S. Craig Sewell, Esquire
119 Lawyers Row
Centreville, Maryland    21617

**End of Opinion**